IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY A. MOSS,

        Petitioner,                      No. CIV S-10-CV-2128 GEB CHS

   vs.

MAURICE JUNIOUS,

        Respondent.                FINDINGS AND RECOMMENDATIONS

_____/

## 1. INTRODUCTION

Petitioner, Gregory A. Moss, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 2008, Petitioner entered a guilty plea to possession of a firearm by a felon and admission of prior felony convictions and terms of imprisonment. In addition, Petitioner was convicted, following a jury trial in Solano County Superior Court, of felony assault on a peace officer with a semiautomatic weapon with penalty enhancements for use of a firearm. Petitioner is currently serving a determinate sentence of seventeen years in state prison. Here, Petitioner challenges the constitutionality of his conviction.

## II. CLAIMS

Petitioner presents two grounds for relief. Specifically, the claims are as follow:

1

(1) His conviction for felony assault on a peace officer with a semiautomatic with a semiautomatic weapon is not supported by sufficient evidence.

(2) Trial counsel rendered prejudicially ineffective assistance.

Based on a thorough review of the record and applicable law, it is recommended that both of Petitioner's claims be denied.

## III. BACKGROUND

The basic facts of Petitioner's crime were summarized in the unpublished opinion of the California Court of Appeal, First Appellate District, as follow:

1. *Prosecution Case*

Around 8:30 p.m. on July 19, 2005, Fairfield police officers Frank Piro and Paul Agusto were on duty, in uniform, and in a marked patrol car in an area known for criminal activity in Fairfield.[FN2]

> FN2. The amended information alleges that the offenses occurred on July 19, 1995. The reporter's transcript indicates that the prosecutor referred to January 19, 2005 in his direct examination of Officer Piro. No issue is made of this discrepency.

The officers observed a green Ford Thunderbird with a broken tail light and conducted an enforcement stop. Officer Piro parked the patrol vehicle behind the Thunderbird and contacted the driver (Gatson). Moss was in the front passenger seat. Officer Agusto was the cover officer.

The officers learned that Gatson was on probation, and Gatson agreed they could search the car. Gatson nonetheless became upset. Officer Piro took Gatson out of the car, brought him back to the patrol vehicle, and had him sit on the curb. Officer Agusto stood near Gatson, who was not in handcuffs.

Officer Piro then returned to the Thunderbird and told Moss that the officers were going to search the car. Piro was concerned that Moss's baggy clothing and untucked T-shirt might be concealing a weapon in his waistband area.

Officer Piro instructed Moss to get out of the Thunderbird, placed him in a "control hold," and had him step out of the car. (At trial, Piro explained that a control hold is a hold that does not apply

2

pressure and is used by police to remove people from vehicles so they cannot fight or flee.)

Moss, who had his back to Officer Piro, suddenly swung his left arm toward Piro in an attempt to hit him, and tried to run forward to free himself from Piro's grip. They struggled for a few seconds, and Piro, unable to regain control, released him. Officer Agusto ran over and shot Moss with his Taser. (At trial, the Taser was explained to be a non-lethal device that "locks up" muscles and makes it difficult to move.) The Taser's darts struck Moss in the leg and near his left shoulder, and he fell to the ground about six to eight feet in front of the Thunderbird. As Moss lay on his stomach, Piro handcuffed Moss's hands behind his back. It was now Agusto's responsiblity to stay with Moss while Piro completed the investigation.

Gatson then got up from the curb and walked towards the officers, who ordered him to sit down. Uncertain whether Gatson was going to flee or try to assist Moss, Officer Piro approached Gatson to handcuff him.

Officer Agusto, standing about three feet from Moss, was responsible for watching Moss and also covering Officer Piro as he attended to Gatson. The Taser darts were still in Moss's body, and the Taser was still in Agusto's hand. After looking towards Piro and Gatson, Agusto looked back at Moss, who was still on his stomach, and saw him reaching across the back of his body and attempting to place his hands or right hand underneath him, shifting his weight like he was rocking back and forth slightly. Agusto ordered Moss to keep his hands behind his back. Agusto checked on Piro, and when he looked back at Moss, Moss had completely concealed his right hand underneath his body, with his left arm pulled all the way to the right side of his back. Moss's right hand was under his waistband area. Moss then rolled onto his left shoulder, toward Agusto, revealing a gun in his hand. Moss's hand was on the grip of the gun and he was trying to get a better grasp of it. In a split second, Moss gained control of the gun and pointed it at Agusto; Agusto could see down the barrel of Moss's gun.

Officer Agusto "sort of panicked" and, stepping out of the line of fire, reactivated the Taser and kicked Moss twice in the side; Moss rolled over onto the gun with his arms behind his back. Agusto yelled "gun" to Officer Piro. Agusto activated the Taser a third time to immobilize Moss, rolled Moss onto his left side, pulled the gun out, and tossed it away.

When Officer Piro heard Agusto yell "gun" and the sound of a Taser, he finished handcuffing Gatson, ordered him to stay on the ground, and ran to Agusto's location.[FN3] Piro got there within a couple of seconds, observing Agusto standing over Moss and pointing a Taser

3

at him. Agusto pointed toward the sidewalk and yelled that a gun was there. Piro saw the gun on the sidewalk, about three feet from Moss, and secured it. The gun was a semi-automatic firearm, loaded with five rounds, with one round already in the chamber.

> FN3. Officer Piro was 10-15 feet from Officer Agusto and Moss while he was handcuffing Gatson, and he had not seen Moss with a gun or observed Agusto kick Moss, move to avoid the line of fire, or roll Moss over to get the gun.

Officer Agusto radioed dispatch for more officers, explaining to the dispatcher that a suspect had pulled a gun on him. A recording of the call was played for the jury.

Officer Agusto also told Officer Piro that Moss had pulled a gun on him. Piro, who had known Agusto for over six years, had never seen Agusto so shaken up. Agusto testified that his hands were trembling and that he was overwhelmed by what had occurred. He was unable to concentrate further that day and had to return home.

Officer Piro took Moss to the Northbay Regional Medical Center to have the Taser darts removed. He noted no injuries on Moss except the dart wounds.

The prosecution placed into evidence the semiautomatic firearm in Moss's possession and Moss's prior convictions for grand theft and possession of a controlled substance for sale.

2. *Defense Case*

Moss testified that he and Gatson were going to Gatson's grandmother's house when they were stopped by Officers Piro and Agusto. Gatson produced his driver's license, and Moss showed Piro his identification. Gatson become angry and asked, "Why you come after us, you racist?" Officer Agusto denied the accusation. Moss became fearful because he was armed with a gun that he intended to sell that night, and he knew the police were going to search them due to Gatson's attitude.

Moss testified that Officer Piro went to the passenger side of the Thunderbird and asked Moss if he minded being searched. Moss objected, saying he was not on probation or parole. Officer Piro grabbed his arm, twisted it, and pulled him out of the car; in pain and afraid, Moss broke free in hopes that he could run and throw the gun away, but he was tasered. He fell to the ground and was unable to get rid of the gun before he was handcuffed with his hands behind him and his palms facing out. He was "kind of wiggling" because his gun

4

was underneath his stomach, and Agusto tasered him again. Moss was on the verge of losing consciousness when he heard one officer say something about a gun; he moved around some more trying to get the gun away from his body, and then was tasered a third time.

At trial, Moss asserted that he never grabbed the gun and could not have grabbed it because his hands were cuffed behind his back. He also claimed it would have been suicidal for him to have attempted to shoot an officer.

During his trial testimony, Moss, wearing the clothes he wore on the night he was arrested, lay on the courtroom floor with his hands cuffed behind his back. Moss attempted to demonstrate that it was impossible for him to grab a gun in his waistband while his hands were handcuffed behind his back.

During cross-examination, Moss admitted that he was not supposed to be in possession of a gun because he had previous convictions for drug sales and theft. For this reason, he was very nervous about the stop by the police. He did not tell the police about the gun, even though he knew the police were going to find it.

3. *Prosecution Rebuttal*

The prosecution called Officers Piro and Agusto as rebuttal witnesses. Officer Piro, who had observed Moss's demonstration in court, could not say whether Moss had accurately demonstrated how he was handcuffed on the night of the incident. However, he heard Moss say during the demonstration that the handcuffs were tight, which is not how the police would normally handcuff a person. Though Moss had testified he was wearing tennis wristbands during the arrest, Piro did not remember him wearing wristbands that night. Officer Agusto testified that Moss did not show the same degree of determination in his in-court demonstration that he displayed on the night of the offense: Moss "didn't even appear to be trying" to reach his hand into his waistband.

4. *Jury Verdict*

The jury found Moss not guilty of count one (attempted murder) but guilty of count two (assault with a semiautomatic firearm on a peace officer). The jury found true the personal use of a firearm allegations under section 12022.5, subdivision (a)(1), and section 12022.53, subdivision (b).

*People v. Moss*, 2009 WL 4878688 at *2-*4.

In addition to the jury findings, Petitioner entered a guilty plea to being a felon in

5

possession of a firearm and admitted prior felony convictions and terms of imprisonment. He was sentenced to an aggregate determinate term of seventeen years in state prison.

Petitioner timely appealed his convictions to the California Court of Appeal, First Appellate District. The court affirmed his conviction with a reasoned opinion on December 17, 2009. He then filed a petition for review of the appellate court's decision in the California Supreme Court. The court denied his review without comment on February 24, 2010.

Petitioner filed his federal petition for writ of habeas corpus on April 1, 2010. Respondent filed its answer on April 23, 2011, and Petitioner did not file a traverse.

## IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal *habeas corpus* relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

6

Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## V. DISCUSSION

### A. INSUFFICIENT EVIDENCE

Petitioner claims that his jury conviction for felony assault on a peace officer with a semiautomatic weapon is not supported by sufficient evidence. According to Petitioner, Officer Agusto's testimony regarding what Petitioner allegedly did while handcuffed and tasered was inherently improbable and could not have happened in the time frame he described, and Officer Piro did not observe what Officer Agusto alleges occurred. Further, Petitioner alleges that had Officer Agusto kicked him twice, as he testified that he had, Petitioner would have suffered more than just the documented injuries from the Taser darts. The California Court of Appeal, First Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> Moss first argues that Officer Agusto's account of Moss's actions was inherently improbable because Moss had been tasered and was lying on his stomach with his hands cuffed behind him. From this position, he asserts, he could not have reached around his hip to the front of his waistband, taken hold of his gun, and raised himself up on to his left side far enough to be able to point the gun at Agusto's head, all in six or seven seconds.
>
> We disagree. There is nothing *inherently* impossible about a person who has his hands cuffed behind him being able to reach around to a gun in his front waistband area, pull it out, and point it at someone in six or seven seconds. While Moss introduced evidence, by way of his own demonstration, that it was impossible for him to do what Agusto said he did, there was also evidence that his demonstration was flawed because he did not exert the same effort he displayed on the night of the offense. This dispute and the credibility of the witnesses were matters for the jury to decide.
>
> Moss also argues that Officer Agusto's account of what *Agusto* did next is inherently implausible because Agusto said it occurred in "a matter of a couple of seconds." Within this period, Moss argues, Agusto could not have stepped to his left, reactivated the Taser darts, kicked Moss's side twice, yelled "gun," rolled Moss off the gun, tossed it out of the way, and radioed for additional officers.

7

Moss's argument is meritless. In the first place, Officer Agusto did not testify that all those actions occurred within two seconds. His reference to "a matter of a couple of seconds" arose when he was asked at trial whether Moss dropped the gun or it fell out of his hand after Agusto kicked him. Agusto testified: "This whole encounter with the defendant from the time I saw the gun to the time it was completely over was a matter of a couple of seconds. So specifically at what time, how the gun fell, it just happened so fast." Given its context, Agusto's testimony about "a matter of a couple of seconds" could reasonably be found to mean that the events occurred so quickly he could not discern or recall exactly how the gun wound up on the ground, as opposed to representing that the entirety of the events transpired literally in two seconds and not a second more. Furthermore, it was not critical to Agusto's testimony that all of his actions occurred within two seconds. Therefore, even if Agusto did not accurately recall the precise number of seconds in which the actions occurred, there was nothing in his description of the actions *themselves* that was physically impossible or unbelievable per se.[FN5]

> FN5.   To put it slightly differently, no reasonable person would reject Agusto's detailed description of the events merely because he might have underestimated their duration by a number of seconds.

Moss next emphasizes that Officer Piro did not see or hear Moss's assault, despite having an unobstructed view from about 10-15 feet away. He believes this makes Officer Agusto's testimony inherently implausible.

Again, we disagree. There is no evidence that Officer Piro was actually looking at Officer Agusto or Moss at the precise moment Moss attempted to gain control of his firearm and pointed it at Agusto. To the contrary, the evidence is that Piro was busy handcuffing Gatson at the time. Under those circumstances, it was not *impossible* for the events to have rapidly occurred as described by Agusto, without Piro noticing them.

Lastly, Moss points out that he suffered no injuries other than those from the Taser darts, and questions how he could be injury-free if he had been kicked twice in the side as Officer Agusto said. His argument has no merit. The force with which Agusto kicked Moss in the side is not material to whether Moss had committed a felony assault by pointing his semiautomatic firearm at Agusto. Furthermore, Agusto did not testify that he *injured* Moss when he kicked him in the side, so the fact that moss did not suffer any apparent injuries to his side does not render Agusto's testimony impossible. Nor was there any expert witness testimony, for example, that it was impossible for Agusto to have kicked Moss in

8

> the side given Moss's physical condition. The fact that Officer Piro identified no other injuries to Moss does not render it *impossible* that Officer Agusto kicked Moss in the side, only that he did not employ force sufficient to cause noticeable injury.
>
> Based on the evidence, it cannot be said that the events as described by Officer Agusto were unbelievable per se, physically impossible, or wholly unacceptable to reasonable minds. The testimony of Officer Agusto was therefore not inherently improbable, and substantial evidence supported the conviction [for felony assault on a peace officer with a semiautomatic weapon].

*Moss*, 2009 WL 4878688 at *5-*7.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On habeas corpus review, the court must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). In applying this standard, the reviewing court refers to the substantive elements of the criminal offense as defined by state law. *See id.* at 324 n.16. Sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[A] reviewing court may not ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt, only whether *any* rational trier of fact could have made that finding." *U.S. v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (internal quotations omitted) (emphasis in original); *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991) ("The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion these jurors reached."). Reversal of a conviction is required only "if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Id.*

1  "A petitioner for a federal writ of habeas corpus faces a heavy burden when
2  challenging the sufficiency of the evidence used to obtain a state conviction on federal due process
3  grounds." *Juan H.V. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). As noted above, all evidence must
4  be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. The
5  prosecution is not required to "rule out every hypothesis except that of guilt," and the reviewing
6  court, "when faced with a record of historical facts that supports conflicting inferences, must
7  presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any
8  such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505
9  U.S. 277, 296-97 (1992) (internal citations omitted). *See also Nevils*, 598 F.3d at 1164. This is so
10 because it is the province of the jury to "resolve conflicts in testimony, to weigh evidence, and to
11 draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. *See also*
12 *Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of
13 witnesses is generally beyond the scope of review."); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir.
14 2004) ("A jury's credibility determinations are therefore entitled to near-total deference under
15 *Jackson*."). Thus, a reviewing court "may not usurp the role of the finder of fact by considering how
16 it would have resolved the conflicts, made the inferences, or considered the evidence at trial."
17 *Nevils*, 598 U.S. at 1164 (citing *Jackson*, 443 U.S. at 318-319).

18  Sufficiency of the evidence claims are judged by "the substantive elements of the criminal
19 offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. The California Penal Code defines
20 felony assault on a police officer with a semiautomatic weapon as follows:

> Any person who commits an assault upon the person of a peace officer or firefighter with a semiautomatic firearm, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years.

25 CAL. PENAL CODE § 245(d)(2). Under California law, an assault does not require a specific intent

10

to cause injury; rather an "assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." *People v. Williams*, 26 Cal.4th 779, 790 (2001).

Viewing the evidence in the light most favorable to the prosecution, it is apparent that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty of felony assault on a peace officer with a semiautomatic weapon. This is not such a case where *all* fact finders would be forced to conclude that the evidence presented failed to establish every element of the crime beyond a reasonable doubt. *See Nevils*, 598 F.3d at 1164. That Petitioner can construct from the evidence alternative scenarios which he claims are at odds with the verdict does not mean that the evidence was constitutionally insufficient to support his conviction. A reviewing court is not permitted, as it appears Petitioner would have this court do, to re-weigh evidence, draw its own independent inferences from the evidence, or substitute its own witness credibility determinations for that of the jury. Petitioner is not entitled to federal habeas corpus relief on this claim.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims he was denied the effective assistance of counsel when trial counsel advised him to plead guilty to being a felon in possession of a firearm and then subsequently failed to inform the jury that he had accepted responsibility for that crime, despite the jury having heard evidence that he was a convicted felon who should not have possessed a gun. The California Court of Appeal, First Appellate District considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> 1. *Background*
>
> As mentioned, the trial court granted the prosecution's motion in limine request to introduce two prior convictions (grand theft and possession for sale of a controlled substance) for three purposes: impeachment if Moss testified, proof of Moss's motive and intent under Evidence Code section 1101, and proof that Moss was a

11

convicted felon for purposes of count three[, being a felon in possession of a firearm]. The court also ruled that Moss could still be impeached with the two priors (if he testified), even if he pled guilty to count three.

Defense counsel thereafter advised the court that he and Moss had discussed the possibility of pleading guilty to count three, Moss believed it was "in his best interest to resolve this issue," and "[n]ow that [Moss] has heard much of this Court's ruling, we would like to plead guilty to Count Three only." Moss did not object to counsel's statements. Subsequently Moss pleaded guilty to count three, and defense counsel confirmed to the court that he had discussed with Moss the defense theory and that counsel believed it would be better for Moss to dispose of count three by pleading guilty.

At the trial on counts one and two, the prosecution introduced evidence of Moss's prior convictions for grand theft and drug offenses. During his testimony, Moss admitted that he had prior convictions and was not supposed to have a gun. Specifically, on direct examination he testified, "Q. Okay. Now, you have told the jury you had the gun, we all know you had the gun? [¶] A. Yes. [¶] Q. And you knew you weren't supposed to have the gun? [¶] A. Yes. [¶] Q. Because we know you have been previously convicted of drug sales and - [¶] A. Yes. [¶] - theft of person, so you knew you weren't supposed to have that gun? [¶] A. Yes." In closing argument, the prosecutor pointed out Moss's admission that he was a convicted felon and, when stopped by the officers, did not want to return to jail.

. . . .

3. *Pleading Guilty to Count Three*

There is no dispute in this appeal that defense counsel discussed with moss the relative merits of pleading guilty to count three. Moss argues that his attorney's advice to plead guilty to count three was deficient, however, because the evidence of his prior convictions, which was admissible to prove count three, was still going to be admitted at trial for other purposes notwithstanding the plea. Respondent counters that the advice to plead guilty to count three was nonetheless prudent, because Moss had no defense to count three, and insisting on his innocence at trial would have damaged his credibility. Furthermore, pleading guilty to count three before trial meant that he was accused before the jury of only two crimes, not three.

Moss has failed to show the prejudice necessary for an ineffective assistance claim. Where, as here, a defendant contends his attorney's deficient advice led to his entering a guilty plea, the defendant must

12

show prejudice by establishing a reasonable probability that, but for counsel's errant advice, he would not have pleaded guilty. In this regard, we may consider whether Moss would have obtained a more favorable verdict if he had proceeded to trial. (*In re Resendiz* (2001) 25 Cal.4th 230, 239, 253-254.)

There is no reasonable probability that Moss would have obtained a more favorable verdict on count three if he had not pleaded guilty on that count. It is undisputed that, at the time of the incident, Moss was a felon and he possessed a gun. In fact, Moss later admitted so under oath. If he had proceeded to trial on count three, whether he testified or not, he would have been convicted. He therefore had no apparent hope of avoiding conviction by going to trial, and there was at least some benefit to removing count three from the jury, for the reasons stated by respondent. Because there is no evidence that defense counsel failed to apprise Moss that his prior convictions would still come into evidence, and there is nothing in the record demonstrating that Moss would have proceeded to trial but for some legal or factual error stated to him by counsel, Moss fails to meet his burden of establishing prejudice.

Moss argues there is a reasonable probability he would h ave obtained a more favorable verdict on count *two* if he had not pleaded guilty on count three, because the jury ended up hearing that he possessed a gun as a felon but not that he had admitted responsibility for it by pleading guilty. This supposedly tainted the jury against him in its deliberations on count two. Because this argument is intertwined with Moss's argument about his counsel's failure to inform the jury of his plea, we address it next.

4. *Not Telling the Jury About the Plea*

Moss contends that his trial counsel provided ineffective assistance because no reasonable attorney would have kept Moss's guilty plea to count three a secret from the jury, particularly since the prosecutor reminded the jury that Moss knew he was not supposed to have a gun as a felon. In Moss's view, his counsel's silence permitted the jury to think that he had not been charged with the violation and would walk out a free man if not convicted on count one or count two. This, he insists, put the jury in a dilemma by which it decided to convict him on count two.[FN6]

> FN6. In his reply brief, Moss contends his argument is supported by the fact that the jury did not convict him of attempted murder. He asserts that its decision not to convict him of attempted murder shows that it did not believe Agusto's testimony that Moss pointed a loaded gun at Agusto's face or that Moss

13

> attempted to use it, and thus the only reason he was convicted on the count two assault charge was because the jury did not want Moss to go free despite having possessed a gun as a felon. The argument is meritless. There is a difference between assault and attempted murder: an assault is an "unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another" (§ 240); attempted murder, by contrast, requires an actual intent to *kill* (§§ 187, 664). The jury, instructed accordingly, reasonably could have believed there was sufficient evidence to convict Moss for assault with a semiautomatic firearm on a peace officer, but not sufficient evidence to convict him of attempted murder.
>
> Moss's argument is untenable. There is absolutely no basis for concluding that Moss's possession of a gun while a felon rendered the jury incapable of properly deciding whether the elements of the charged assault had been proved beyond a reasonable doubt. There is nothing so shocking, inflammatory, or prejudicial about a felon's possession of a gun that would lead a jury to convict him of assault contrary to the evidence and the instructions of the court. More than adequate evidence supported the conviction on count two, and the jury was specifically instructed to base its decision solely on the evidence at trial and not to let bias, sympathy, prejudice, or public opinion influence its decision. The court further instructed the jury that it had to reach its decision without consideration of punishment and could consider only the evidence presented in the courtroom.
>
> Moss fails to establish ineffective assistance of counsel.

*Moss*, 2009 WL 4878688 at *7-*9.

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the effective assistance of counsel. A showing of ineffective assistance of counsel has two components. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must demonstrate that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*,

14

466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). As the United States Supreme Court recently emphasized, the question for a federal court conducting habeas corpus review under section 2254(d) "is not whether counsel's actions were reasonable." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (internal quotations and citations omitted). The determination to be made, therefore, is not whether counsel acted reasonably, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id. See also Williams v. Taylor*, 529 U.S. 362, 391-92 (2000); *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). Importantly, on collateral review, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).

The thorough decision of the California Court of Appeal, First Appellate District, rejecting Petitioner's claim that the trial court erred by declining his motion for a new trial based on his ineffective assistance of counsel allegations is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the circumstances. As the state appellate court explained, the tactical decisions exercised by

15

counsel at trial were reasonable and within the bounds of the discretion afforded to counsel. Thus, Petitioner has failed to overcome the significant burden of demonstrating that trial counsel's performance fell below professionally acceptable standards. Under the circumstances of this case, and for the reasons expressed by the state appellate court, Petitioner's trial counsel did not render ineffective assistance.

Moreover, even if Petitioner could establish that trial counsel rendered constitutionally ineffective assistance, which he cannot, he has also failed to demonstrate that he suffered any prejudice as a result of the errors he alleges. In other words, there is no reasonable probability that had he chosen to proceed the trial on the felon in possession charge, the jury would have acquitted him. This is so because the record demonstrates that Petitioner was, in fact, a felon in possession of a firearm at the time of the July 19, 2005. Moreover, there is no reasonable probability that counsel's failure to explain to the jury that Petitioner had accepted responsibility by choosing to enter a guilty plea to the felon in possession charge had any effect or influence on the jury's verdict. The jury was properly instructed with respect to all counts facing Petitioner, and jurors are presumed to follow the court's instructions. *Kansas v. Marsh*, 548 U.S. 163, 179 (2006); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

Petitioner is not entitled to habeas corpus relief on this claim.

## VI. CONCLUSION

For all of the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

      1.    Petitioner's April 1, 2010 petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied; and

      2.    The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time waives the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: March 20, 2011

*[signature: Charlene H. Sorrentino]*
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE